# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 18-1361V
UNPUBLISHED

| | |
|---|---|
| NORMA BLANCO,<br><br>               Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: July 6, 2020<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Amy A. Senerth, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Ryan Daniel Pyles, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On September 6, 2018, Norma Blanco filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Shoulder Injury Related to Vaccine Administration (SIRVA) as a result of an influenza ("flu") vaccine received on December 27, 2016.  Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons described below, and after holding a brief hearing in this matter, I find that Petitioner is entitled to an award of damages in the amount **$136,140.52**, **representing compensation of $135,000.00 for her actual pain and suffering, plus $1,140.52 for her past unreimbursed expenses.**

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.      Procedural Overview

As noted above, the case was initiated in September 2018. On October 15, 2019, Respondent filed a Rule 4(c) report in which he conceded that Petitioner was entitled to compensation in this case. ECF No. 23. Accordingly, on October 16, 2019, I issued a ruling on entitlement finding Petitioner entitled to compensation for SIRVA.  ECF No. 25.

The parties were unable to informally resolve the issue of damages, reaching an impasse on an appropriate award of pain and suffering, and agreed that I should enter a decision on the written record. ECF Nos. 24, 30. A briefing schedule was thus set on January 17, 2020. ECF No. 32. Petitioner filed a brief on February 18, 2020, requesting that I award her $160,000.00 in compensation representing her past/actual pain and suffering. ECF No. 35. Conversely, in a brief filed on March 20, 2020, Respondent recommended that I award $130,000.00 to Petitioner for her past pain and suffering. ECF No. 37. The parties otherwise agree an award of $1,140.52 in compensation for Petitioner's past unreimbursed expenses is appropriate, and there are no other damages components in contention beyond pain and suffering. ECF Nos. 38, 40.

In April of this year, I informed the parties that I believed this case was appropriate for an expedited hearing and ruling, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. ECF No. 39. The parties agreed, and an expedited hearing took place, telephonically, on June 26, 2020. ECF Nos. 40-41; Minute Entry dated June 26, 2020.[3] I orally ruled on the pain and suffering issue at that time, and this Decision memorializes my determination.

## II.      Legal Standard and Prior SIRVA Compensation

In several recent decisions, I have discussed at length the legal standard to be considered in determining an appropriate award of pain and suffering, as well as prior SIRVA compensation in SPU cases. I fully adopt and hereby incorporate my prior discussion in sections V and VI of *Wilt v. Sec'y of Health & Human Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020), sections IV and V of *Rafferty v. Sec'y of Health & Human Servs.,* No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020), as well as sections VI(A) and VI(B) of *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-0291V, 2020 WL  2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

---

[3] The transcript of the June 26, 2020 Hearing in this case was not yet filed as of the date of this Decision, but is incorporated by reference herein.

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]


### III.    Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of the injury is not disputed. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for Petitioner's pain and suffering, I have carefully reviewed and considered the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, and all assertions made by the parties in written documents and at the expedited hearing held on June 26, 2020. Respondent's Rule 4 Report, the parties damages briefs, and the oral argument presented by counsel at the June 26, 2020 Hearing provide detailed summaries of the medical records and affidavits filed in this case and are hereby incorporated by reference. ECF Nos. 23, 35, and 37. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

In his briefing and during argument, Respondent asserted that pain and suffering awards outside the Program (often arising in state court tort actions) should be considered (and noted they tend to be lower in magnitude). However, I find that awards issued *within* the Program are most persuasive. It is important to bear in mind the policy purposes of the Program – that it is no-fault and is intended to be generous in many regards, resulting in a slightly different scale (that admittedly may produce higher award values than the non-Program comparables pointed to by Respondent). Thus, other *reasoned* decisions in the Vaccine Program provide the most useful guidance in reaching an award amount in this case. (I do not disagree, however, that Respondent might in some cases be able to offer a comparable state-court determination, and I will evaluate such a case if it is demonstrated to be factually relevant).

---

[4] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (citing *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

For the reasons discussed below, and pursuant to my oral ruling on June 26, 2020 (which is fully adopted herein), **I find that $135,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering.**

First, I note that Petitioner's pain was severe relatively immediately, and prompted her to seek treatment less than a month after her December 27, 2016 flu vaccination. Ex. 1, Ex. 2 at 6. Thereafter, she underwent significant treatment for her injury for over two years, to include: physical therapy,[5] four steroid injections,[6] three MRI scans,[7] massage therapy (Ex. 24), acupuncture (Exs. 5 and 25), and arthroscopic surgery (Ex. 9 at 4-6).

Second, Petitioner's medical records evidence she suffered a fairly severe injury. Although Petitioner's reported pain levels fluctuated during her treatment and prior to her surgery, most frequently she reported a pain level of eight out of ten.[8] Her injury as evidenced on MRI was particularly significant. The impression from Petitioner's April 4, 2018 MRI included: "tendinosis and partial-thickness tears of both the supraspinatus and infraspinatus tendons extending to the bursal surface," [m]ild supraspinatus and infraspinatus muscle edema without significant atrophy," and "subacromial-subdeltoid bursitis." Ex. 9 at 2-3. Petitioner's treatment culminated in a significant surgical procedure on May 15, 2018 – a left shoulder arthroscopic subacromial decompression, arthroscopic biceps tenotomy with glenohumeral debridement, and arthroscopic rotator cuff repair. Ex. 9 at 4-6.

However, Petitioner made a substantial recovery subsequent to her surgical intervention and after completing additional physical therapy. Her last filed physical therapy record from August 31, 2018, reflects a pain level of two out of ten and good range of motion, but ongoing weakness and persistent pain. Ex. 10 at 92.  At a follow-up appointment on October 31, 2018, she reported she still had some pain, but "I can finally

---

[5] The exact amount of physical therapy Petitioner completed is not clear. Petitioner filed medical records from Shore Wellness Center evidencing two physical therapy appointments prior to her surgery. Ex. 4. However, a signed statement from physical therapist Sheela N. Iyer indicates Petitioner was seen by her for an additional sixteen pre-surgery appointments beginning on October 31, 2017. Ex. 21.  Additionally, Petitioner filed medical records evidencing she completed 22 physical therapy appointments at Professional Orthopedics Associates post-surgery with clinician Sheela Iyer. The last filed record is from August 31, 2018.  Ex. 10 at 92.  However, the signed statement from Ms. Iyer indicates Petitioner engaged in 25 post-surgery appointments and was discharged on October 10, 2018. Ex. 21.

[6] Petitioner received steroid injections on the following dates: January 26, 2017 (Ex. 3 at 3-4), May 19, 2017 (Ex. 3 at 6, 8), October 27, 2017 (Ex. 3 at 18-19), and February 14, 2018 (Ex. 9 at 11).

[7] Petitioner's MRI scans occurred on the following dates: 1/21/2017 (Ex. 3 at 26), 6/17/2017 (Ex. 3 at 28), and 4/4/2018 (Ex. 23 at 3-4).

[8] On January 27, 2017, Petitioner's pain level was 5/10. Ex. 4 at 1. However, on 7/25/2017, her pain level was reported to be 10/10.  Ex. 6 at 9.  Thereafter, on 8/16/2017, 9/27/17, and 4/13/18 her pain level was reported to be an 8/10.  Ex. 6 at 1, 5, and 7.  However, on 11/22/2017 her pain level was reported to be 2/10.  Ex. 6 at 3.

move my arm without screaming." Ex. 23 at 6. She did not seek further treatment until May 15, 2019 – over seven months later at her one-year post-surgery follow-up appointment – at that time Petitioner reported "[t]hank God it's over" and that she felt good. Ex. 23 at 5.

In making my determination, I have fully considered Petitioner's signed statement, and those of her family members, friends, and coworkers, all of which detail the limitations in her overall enjoyment of life, work duties, and exercise of daily functions attributable to her injuries. Exs. 11-20, 22, 27.

I find that Petitioner's injury is comparable to, but not as severe as, the injury experienced by the petitioner in the *Reed* case cited by Petitioner in support of her proposed award. *Reed v. Sec'y of Health & Human Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for past pain and suffering and $4,931.06 in unreimbursable medical expenses). While Petitioner suffered a significant injury for over two years which required extensive treatment, she ultimately made a strong recovery subsequent to surgery. In contrast, the *Reed* petitioner experienced what she described as a "failed surgery" and reported considerable pain nearly two and a half years subsequent to the onset of her injury. *Id.* at *15-16. In fact, although the petitioner in *Reed* was unable to establish entitlement to an award of *future* pain and suffering, she remained under the care of pain management specialists and continued to require the pain medication Tramadol to treat her injury. *Id.* at *9,11, 16. In this case, however, Ms. Blanco no longer remains under medical care for her injury. Finally, the *Reed* petitioner's physical ability to care for a young child with an ADHD autism spectrum disorder was negatively impacted by her injury – a factor not present in the instant case. *Id.* at *11, 16.

I thus find the amount awarded In *Reed* to exceed what is appropriate in this case, given such dissimilarities. Rather, this case is more in line with – although somewhat more severe than – *Dobbins* and *Rafferty*, where awards similar to what I am allowing herein were obtained. *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for pain and suffering and $3,143.80 in unreimbursable medical expenses); *Rafferty v. Sec'y of Health & Human Servs.,* No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020) (awarding $127,500.00 for pain and suffering and $4,154.04 in unreimbursable medical expenses).

## IV.    Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $<u>136,140.52</u>, representing compensation of $135,000.00 for her past pain and suffering, plus $1,140.52 for her past unreimbursed expenses.** This amount represents compensation for all damages that would be available under Section 15(a). The clerk of the court is directed to enter judgment in accordance with this decision.[9]

**IT IS SO ORDERED.**

                                        **<u>s/Brian H. Corcoran</u>**
                                        Brian H. Corcoran
                                        Chief Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.